UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIAN SEABERRY,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security<br><br>　　　　　Defendant. | No. 2:16-cv-2310-EFB<br><br><br>ORDER |

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. The parties have filed cross-motions for summary judgment. For the reasons discussed below, plaintiff's motion is denied and the Commissioner's motion is granted.

I.　BACKGROUND

Plaintiff filed an application for SSI, alleging that she had been disabled since January 22, 2012.[1] Administrative Record ("AR") at 165-170. Plaintiff's application was denied initially and upon reconsideration. *Id.* at 87-91, 102-108. On June 17, 2014, a hearing was held before

---

[1] Plaintiff subsequently amended his disability onset date to January 22, 2013. AR 9.

1

Administrative Law Judge ("ALJ") Lawrence Duran. *Id*. at 24-60. Plaintiff was represented by a non-attorney at the hearing, at which he and a vocational expert ("VE") testified. *Id*. On May 14, 2015, the ALJ issued a decision finding that plaintiff was not disabled under section 1614(a)(3)(A) of the Act.[2] *Id*. at 9-19. The ALJ made the following specific findings:

1. The claimant has not engaged in substantial gainful activity since January 22, 2013, the application date (20 CFR 416.971 *et seq.*).

\* \* \*

2. The claimant has the following severe impairments: hypertension, diabetes mellitus, and diabetic neuropathy (20 CFR 416.920(c)).

\* \* \*

---

[2] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. §§ 401 *et seq*. Supplemental Security Income ("SSI") is paid to disabled persons with low income. 42 U.S.C. §§ 1382 *et seq*. Under both provisions, disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A five-step sequential evaluation governs eligibility for benefits. *See* 20 C.F.R. §§ 423(d)(1)(a), 416.920 & 416.971-76; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

*Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. *Yuckert*, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. *Id.*

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.416.920(d), 416.925 and 416.926).

   * * *

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except with the following limitations: he could lift and carry 20 pounds occasionally and ten pounds frequently; stand, walk, and sit six hours of an eight-hour day with a sit-stand option in 30 minute intervals at will; he needs to elevate his feet at will, when seated, 24 inches; use of a cane for walking; occasional climbing and stooping to knee level; never kneeling, crouching, crawling, or climbing ladders, ropes, or scaffolds; and may be absent or off task 5% of the time.

   * * *

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

   * * *

6. The claimant was born [in] 1964 and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963)

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocation Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

   * * *

10. The claimant has not been under a disability, as defined by the Social Security Act, since January 22, 2013, the date the application was filed (20 CFR 416.920(g)).

*Id.* at 11-18.

/////

/////

/////

3

Plaintiff's request for Appeals Council review was denied on July 29, 2016, leaving the ALJ's decision as the final decision of the Commissioner. *Id.* at 1-4.

## II. LEGAL STANDARDS

The Commissioner's decision that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

The findings of the Commissioner as to any fact, if supported by substantial evidence, are conclusive. *See Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985). Substantial evidence is more than a mere scintilla, but less than a preponderance. *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

## III. ANALYSIS

Plaintiff argues that the ALJ erred at step-five of the sequential evaluation by relying on the vocational expert's testimony to find that he was not disabled. Specifically, plaintiff contends that the ALJ failed to resolve conflicts between the vocational expert's testimony and the Dictionary of Occupational Titles ("DOT") as well as the Occupational Outlook Handbook ("OOH").

### A. Relevant Legal Standards

At the fifth step, the ALJ is required to "identify specific jobs existing in substantial numbers in the national economy that [the] claimant can perform despite her identified

limitations." *Johnson v. Shalala*, 60 F.3d 1428, 1432 (9th Cir. 1995). The ALJ must first assess the claimant's residual functional capacity ("RFC"), which is the most the claimant can do despite her physical and mental limitations. 20 C.F.R. § 416.945(a)(1). The ALJ then must consider what potential jobs the claimant can perform given her RFC, age, education, and prior work experience. 20 C.F.R. § 416.966; *see Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). "In making this determination, the ALJ relies on the [Dictionary of Occupational Titles], which is the SSA's primary source of reliable job information regarding jobs that exist in the national economy." *Zavalin v. Colvin*, 778 F.3d 842, 845-46 (9th Cir. 2015) (quotation marks omitted).

In additional to the DOT, an ALJ may rely on testimony from a vocational expert who testifies about the jobs the claimant can perform in light of her limitations. 20 C.F.R. §§ 404.1566(e), 416.966(e); *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009). Generally, occupational evidence provided by a vocational expert should be consistent with the occupational information supplied by the DOT. *Massachi v. Astrue*, 486 F.3d 1149, 1153 (9th Cir. 2007) (citing SSR 00-4p, at *4). However, "an ALJ may rely on expert testimony which contradicts the DOT, but only insofar as the record contains persuasive evidence to support the deviation." *Johnson*, 60 F.3d at 1435.

B. <u>Background</u>

At the administrative hearing, the ALJ posed multiple hypothetical questions to the vocational expert. In the second question, the ALJ asked if an individual approaching advanced age, with plaintiff's education, work experience, and residual functional capacity, except the limitation that the individual may be absent or off task 5 percent of the time, could perform plaintiff's prior work as a gas line and meter inspector. AR 51. The vocational expert concluded that the need for the individual to elevate his feet at 24 inches would preclude such work. *Id*. at 52. He explained that if an individual had to elevate his feet while sitting, it would make it difficult for the individual to accomplish tasks. *Id*. at 52-53. The ALJ clarified that the individual only needed to be able to elevate the legs at will, not the entire time he was sitting. *Id*. at 53-54. Plaintiff also added that he typically elevates his feet about 4 hours a day. *Id*. at 54. The vocational expert concluded that the hypothetical individual would still be precluded from

performing plaintiff's past relevant work due to the need to elevate feet at will. *Id*. at 55. He further noted that the requirement for a cane to walk would also be an impediment to walking on uneven terrain, which is likely required for inspecting gas lines. 55.

The vocational expert testified, however, that there were other jobs that plaintiff could perform, but that the number of available positions would be eroded by the need to elevate feet at will for half the workday. *Id*. at 56. Specifically, he concluded that plaintiff could work as an information clerk, general office clerk, and a survey worker, which are all light, unskilled positions. *Id*. at 57-58. The ALJ followed up with a third hypothetical, which asked the vocational expert to assume the same facts as the prior hypothetical, but add the limitation that the person may be absent or off task 5 percent of the time. The vocational expert concluded that the person could still perform all three jobs. *Id*. at 58. The vocational expert further stated that his testimony was consistent with the DOT, but noted that several of the issues presented were not addressed by the DOT. Specifically, he stated that the DOT does not address the requirement of elevated feet or being absent or off task 5 percent of the time. *Id*. Based on the vocational expert's testimony, the ALJ concluded that plaintiff was not disabled because there were a significant number of jobs in the national economy that plaintiff could perform. *Id*. at 17-18.

        C.     Analysis

Plaintiff first argues that the ALJ failed to resolve a conflict between the vocational expert's testimony that plaintiff could perform the work as an information clerk, general office clerk, and a survey worker, as defined by the DOT, and plaintiff's RFC. ECF No. 15 at 8-11. He contends that all jobs are jobs are characterized as light work under the DOT—requiring standing and walking up to 6 hours a day—which conflict's with the requirement that he elevate his legs for 4 hours a day. *Id*.

The DOT classifies all three jobs as light exertional level. Information Clerk, DOT 237.367-018, 1991 WL 672187; Office Helper, DOT 239.567-010, 1991 WL 672232; Survey Worker, DOT 205.367-054, 1991 WL 671725.[3] The primary difference between light and

---

[3] The DOT refers to two of the positions as "Officer Helper" and "Survey Worker," while the vocational expert referred to these jobs as "general office clerk" and "survey worker." For

6

sedentary work is that the former generally requires a good deal of walking or standing. SSR 83-10; 20 C.F.R. § 404.1567(b). However, jobs that required a great deal of sitting but with pushing and pulling of arm-hand or leg-foot controls are also categorized as light work. *Id*. To perform the full range of light work, the claimant must be able to stand or walk, off and on, for approximately 6 hours during a typical 8 hour work day. SSR 83-10.

As a threshold matter, the ALJ did not specifically find that plaintiff needed to elevate his legs four hours a day. Instead, the ALJ's RFC determination found that plaintiff maintained the ability to stand and walk for up to six hours in an eight-hour day, but would need a sit-stand option and the ability to elevate his feet at will when sitting. AR 12. Thus, the premise of plaintiff's argument—that plaintiff must elevate his legs for four hours a day—is absent from the plaintiff's RFC.[4] But even assuming plaintiff has such a limitation, the vocational expert considered the impact that a need to elevate his legs for prolonged periods would have on his ability to work to work as an information clerk, general office clerk, and a survey worker. Specifically, the ALJ concluded that the requirement that plaintiff elevate his legs 4 hours a day would eliminate 50 percent of the available positions for all three jobs. Thus, even if plaintiff's RFC had conflicted with the DOT's definition of these jobs as light work, the vocational expert addressed and resolved the conflict.

Plaintiff also contends that the vocational expert failed to account for the need to use a cane for walking. ECF No. 15 at 8, 11. Plaintiff is mistaken. The vocational expert specifically testified that "if the cane is constantly used that doesn't eliminate all light jobs but it eliminates a good deal of jobs, any jobs that might require any carrying of bulky items and so forth." AR 54. He further testified use of cane would impede the ability to walk on uneven terrain. *Id*. at 55. None of the jobs identified by the ALJ require carrying bulky items or walking on uneven terrain. *See* Information Clerk, DOT 237.367-018, 1991 WL 672187 (requiring worker to provide travel information and furnish patrons with timetables and travel literature); Office Helper, DOT 239.567-010, 1991 WL 672232 (furnishes workers with clerical supplies, sorts and delivers mail,

---

ease of reference, the court uses the job names provided by the vocational expert.
    [4] Plaintiff does not challenge the ALJ's RFC determination.

distributes paperwork, and packages); Survey Worker, DOT 205.367-054, 1991 WL 671725 (contacts and interviews people at home, place of business, on street, or by telephone to compile statistical information). Accordingly, there is no conflict with plaintiff's need to use a cane for walking and the vocational expert's testimony that plaintiff could perform these positions.

Lastly, plaintiff argues that the ALJ erred in relying on testimony that conflicted with the Occupational Outlook Handbook ("OOH") and O*NET. He contends that under OOH, including its cross-references to O-NET, the job descriptions for the three positions reflect that the positions are more accurately categorized as sedentary, as opposed to light, work. ECF No. 15 at 12-13. He further notes that the vocational expert testified that an individual that would need to have his legs raised for 4 hours a day would have difficulty performing sedentary work. *Id*. at 13.

The U.S. Court of Appeals for the Ninth Circuit has recently declined to treat the DOT and the OOH the same. In *Shaibi v. Berryhill*, 870 F.3d 874 (9th Cir. 2017), the plaintiff argued that the ALJ improperly relied on the vocational expert's estimate of available jobs in finding that there were a significant number of jobs the plaintiff could perform. *Id*. at 880, *as amended*, No. 15–16849, slip op. at 16–17 (9th Cir. Feb. 28, 2018). The court held that the plaintiff had waived the argument because he was represented by counsel during the administrative proceedings, but failed to raise the issue before the agency. *Id*. The Ninth Circuit explained:

> [W]e can find no case, regulation, or statute suggesting that an ALJ must sua sponte take administrative notice of economic data in the [County Business Patterns] or the OOH. It is true that an ALJ is required to investigate and resolve any apparent conflict between the VE's testimony and the DOT, regardless of whether a claimant raises the conflict before the agency. But Shaibi cites to no authority suggesting that the same is true for the CBP and OOH. Our precedent holds, instead, that an ALJ may rely on a vocational expert's testimony concerning the number of relevant jobs in the national economy, and need not inquire sua sponte into the foundation for the expert's opinion.

*Id*. at 881 (citations omitted).

Thus, the Ninth Circuit has already ruled that the OOH and the DOT do not stand on the same footing. *See Paris v. Berryhill*, 2017 WL 4181093, at *4 (E.D. Cal. Sept. 20, 2017) (citing to *Shaibi* to find that "the Ninth Circuit has rejected plaintiff's contention that the 'OOH stands on the same footing as the DOT.'"). Moreover, courts in this circuit have consistently found that

8

an ALJ is under no obligation to resolve a conflict between the vocational expert's testimony and the OOH. *See Meza v. Berryhill*, 2017 WL 3298461, at *8 (C.D. Cal. Aug. 2, 2017) ("The ALJ was not required to resolve any conflicts between the OOH or O*NET."); *Palomino v. Colvin*, 2015 WL 2409881, at *6 (C.D. Cal. May 20, 2015) ("[P]laintiff has cited to no authority for the proposition that an ALJ is bound by the OOH."); *Gandara v. Berryhill*, 2017 WL 4181091, at *5 (E.D. Cal. Sept. 20, 2017) ("[P]laintiff fails to provide authority for the proposition that an ALJ must *sua sponte* identify and take administrative notice of the educational requirements in the OOH, compare them with the VE's hearing testimony, and determine any inconsistencies."); *Willis v. Astrue*, 2009 WL 1120027 at *3 (W.D. Wash. Apr. 24, 2009) ("First, plaintiff provides no basis for relying on a perceived conflict between the O-NET and the VE testimony . . . . SSR 00-4p and cases decided subsequent to that ruling specifically require the resolution of conflicts between the DOT and a VE's testimony . . . . Plaintiff fails to provide any support for a contention that the creation of the O-NET altered this requirement."); *Walker v. Berryhill*, 2017 WL 1097171, at *4 (C.D. Cal. Mar. 23, 2017) (noting that the "Ninth Circuit has long recognized the primacy of the DOT," and holding that the ALJ was not required to resolve any conflict between the VE's testimony and the OOH).

The ALJ was not obligated to resolve any conflict between the OOH or O*NET. Accordingly, the ALJ properly relied on the vocational expert's testimony to find that plaintiff could work as an information clerk, a general office clerk, and a survey worker.

IV. <u>CONCLUSION</u>

Accordingly, it is hereby ORDERED that:

1. Plaintiff's motion for summary judgment is denied;

2. The Commissioner's cross-motion for summary judgment is granted; and

3. The Clerk is directed to enter judgment in the Commissioner's favor and close the case.

DATED: March 22, 2018.

*/s/ Edmund F. Brennan*
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

9